UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHESLEY McLAREN,

                    Plaintiff,


        v.                                    Civil Action No. 10-CIV-02481 (JSR)(JMF)


CHICO'S FAS, INC.,

                    Defendant.

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO DISMISS THE COMPLAINT


FISH & RICHARDSON P.C.
601 Lexington Avenue, 52nd Floor
New York, New York  10022-4611
Telephone:  (212) 765-5070
Facsimile:   (212) 258-2291

Attorneys for Defendant
Chico's FAS, Inc.

Of Counsel:

Matthew Levine (ML 6247)
Kristen McCallion (KM 5593)

## TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ................................................................ 1

II.  STATEMENT OF FACTS.................................................................... 4

   A.   Allegations of Copyright Infringement................................................ 4

   B.   Allegations Concerning Plaintiff's Copyright Registration and Plaintiff's
        Representations to the Copyright Office in Her Copyright Application......... 5

   C.   The Complaint Demonstrates That Plaintiff First Published the Mannequin
        Illustration on or before December 1, 1998 —
        and Not on November 4, 2000 ....................................................... 6

   D.   The Complaint Demonstrates That Plaintiff First Published Three Other
        Illustrations Contained in the Collection in March 2000 and
        October 2000 — and Not on November 4, 2000 ................................. 7

        1.   The Bloomer Illustration ...................................................... 7

        2.   The Dress Illustrations ....................................................... 8

   E.   The Complaint Demonstrates That Plaintiff First Published Many Other
        Illustrations Contained in the Collection on Dates Other Than
        November 4, 2000........................................................................ 9

III. LEGAL STANDARD ON A MOTION TO DISMISS ................................. 11

IV.  THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE
     PLAINTIFF'S COPYRIGHT REGISTRATION IS INVALID.................... 12

   A.   Plaintiff Must Hold a Valid Copyright Registration To Prosecute This
        Action .................................................................................... 12

   B.   Plaintiff's Copyright Registration is Invalid .................................... 12

        1.   Plaintiff's Registration is Not Eligible For "Group Registration"
             Under the Relevant Copyright Regulations ........................... 12

        2.   Plaintiff's Registration Does Not Comply With the "Single Work"
             Regulations Either ....................................................... 14

V.   CONCLUSION ............................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cortec Indus., Inc. v. Sum Holding L.P.,*
  949 F.2d 42, 47 (2d Cir. 1991)..................................................................................11

*Gregory v. Daly,*
  243 F.3d 687, 691 (2d Cir. 2001)................................................................................11

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,*
  413 F.3d 257, 261 (2d Cir. 2005)..................................................................................8

*Kay Berry, Inc. v. Taylor Gifts, Inc.,*
  421 F.3d 199, 204-206 (3d Cir. 2005) ................................................................... passim

*L.A. Printex Indus. Inc. v. Aeropostale Inc.,*
  2010 U.S. Dist. LEXIS 46951, at * 2, 10, 13, 16-17 (C.D. Cal., May 5, 2010)............. passim

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.,*
  2010 WL 1838874, at *3, 8 (S.D.N.Y., May 4, 2010).......................................12, 18

*Reed Elsevier, Inc. v. Muchnick,*
130 S. Ct. 1237, 1242 (2010) ......................................................................................14

*R.F.M.A.S., Inc. v. Mimi So,*
  619 F. Supp.2d 39, 58-59 (S.D.N.Y. 2009) ................................................................12

*Shoptalk, Ltd. v. Concorde-New Horizons Corp.,*
  168 F.3d 586, 591 (2d Cir. 1999)................................................................................17

*Still v. DeBuono,*
  101 F.3d 888, 891 (2d Cir. 1996)................................................................................11

*Telebrands Corp. v. Del Laboratories, Inc.,*
  2010 WL 2541218, at *2 (S.D.N.Y., June 15, 2010).....................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308, 323 (2007)............................................................................................11

*Thron v. HarperCollins Publishers, Inc.,*
  2002 WL 1733640, at *1 (S.D.N.Y. July 26, 2002) ..................................1, 3, 12, 18

## STATUTES

17 U.S.C. § 101......................................................................................................15, 17

17 U.S.C. § 408(c)(1)....................................................................................................13

17 U.S.C. § 409.............................................................................................................13

17 U.S.C. § 411(a) ........................................................................................................12

## TREATISES

M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 4.12[A], at 4-60 (1997)...............17

Wright & Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004 and Supp. 2007)...........11

## OTHER AUTHORITIES

37 C.F.R. § 202.3 *et seq.*............................................................................ passim

Fed. R. Civ. P. 12(b)(6)..............................................................................................5, 11

Fed. R. Evid. 201(b)........................................................................................................7

## I.    PRELIMINARY STATEMENT

Plaintiff Chesley McLaren, a designer and illustrator, has commenced this action claiming that Defendant Chico's, FAS, Inc., a retail chain selling women's apparel, has infringed her duly registered copyrighted work.  The registered work is a collection of 24 pages of drawings that includes one illustration that Plaintiff alleges served as a design for female mannequins.  Plaintiff alleges that she licensed this design to a manufacturer named Ralph Pucci, so that Pucci could make and sell mannequins, based on her designs, to retail stores.

The alleged infringement purportedly occurred when Chico's displayed mannequins that Plaintiff contends are similar to her design, but that Chico's did not purchase from Pucci. Chico's denies these allegations, but the Court need not resolve this dispute at this point, because Plaintiff faces a more fundamental barrier to prosecuting this suit.

The barrier Plaintiff must surmount is high.  The Complaint, taken as a whole, demonstrates beyond any doubt that Plaintiff's copyright registration is invalid.  As the Court is well aware, "[i]n order to bring a copyright claim, a claimant, with exceptions not here relevant, must first demonstrate that [she] holds a valid and proper copyright registration." *Thron v. HarperCollins Publishers, Inc.*, 2002 WL 1733640, at *1 (S.D.N.Y. July 26, 2002) (Rakoff, J.). As we demonstrate more fully below, Plaintiff's copyright registration is invalid because Plaintiff utterly failed to comply with the governing copyright regulations when registering numerous standalone drawings spanning 24 pages under a single registration.

The benefits of registering multiple works in a single copyright registration are obvious: a claimant only has to fill out one registration form and pay one fee.  Thus, there are only two ways that the Code of Federal Regulations governing copyright registration permit an individual to register multiple works under a single registration.

1

The first permissible way allows a copyright claimant to register a single "group registration" of "related works." In this circumstance, an individual may register a group of works together if they fall into one of six enumerated categories: (i) automated databases, (ii) related serials, (iii) daily newspapers, (iv) contributions to periodicals, (v) daily newsletters and (vi) published photographs. 37 CFR § 202.3(b)(5) – (10); *see Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 204 (3d Cir. 2005). Plaintiff's drawings do not fall into any of those categories, so Plaintiff's registration is not valid as a "group registration of related works."

The second permissible way allows a copyright claimant to register a collection of works under a "single work" registration. To qualify for this method when registering a collection of published works, the claimant must show, among other things, that the works were published in a "single unit of publication." 37 C.F.R. § 202.3(b)(4)(i)(A); *see Kay Berry*, 421 F.3d at 205. Put simply, that means that the individual works in the collection must have been published together simultaneously.

A "classic example" of a "single work" publication is a board game:

> "[T]he board, the playing pieces, and the instructions may all be individually entitled to copyright protection, but since they are packaged as a single unit (the game itself), it is appropriate to allow the copyright owner to register the entire game, and protect the individual elements through that single registration." *Kay Berry*, 421 F.3d at 205.

Here, the facts alleged by Plaintiff demonstrate beyond any doubt that she did not publish all 24 pages of drawings together and simultaneously.

Specifically, Plaintiff represents in the copyright registration at issue that all 24 pages of drawings were published for the first time together on <u>November 4, 2000</u>. However, indisputable proof — established by the Complaint's allegations, its exhibits, the documents incorporated by reference and relied upon in the Complaint, and matters over which the Court may take judicial notice (including other copyright registrations) — demonstrate the following:

2

- The mannequin designs at issue in this case, which are included in Plaintiff's 24-page collection of drawings, were published no later than <u>December 1, 1998</u> – almost *two years before* the November 4, 2000 date Plaintiff represents in her copyright registration;

- The first publication of an illustration drawn by Plaintiff for the cover of a book entitled "You Forgot Your Skirt, Amelia Bloomer!", which illustration is also included in Plaintiff's 24-page collection of drawings, occurred no later than <u>March 1, 2000</u>, the date of the book's publication – *six months before* the November 4, 2000 date Plaintiff represents in her copyright registration;

- The first publication of illustrations drawn by Plaintiff for the cover and content of another book, entitled "Obsessed by Dress," which illustrations also are included in Plaintiff's 24-page collection of drawings, occurred no later than <u>October 17, 2000</u>, the date of the book's publication – again at a time prior to, and different than, the November 4, 2000 date Plaintiff represents in her copyright registration; and

- Other illustrations contained in the 24-pages of drawings were, according to the Complaint, published in newspapers and magazines, such as <u>The New York Observer</u>, <u>Vogue</u>, and <u>Athena</u>, and in promotional materials or packaging for retailers such as Bergdorf Goodman, Bendel's, Estee Lauder, Saks Fifth Avenue, Chanel, Christian Dior, and Givenchy.  Even a brief review of these illustrations demonstrates the utterly implausibility that these multiple illustrations were published together simultaneously, let alone all on November 4, 2000, as represented in Plaintiff's copyright registration.

Because Plaintiff wholly failed to comply with the regulations governing registration of multiple works in a single registration, Plaintiff's registration is invalid and the Complaint should be dismissed as a matter of law. *L.A. Printex Indus. Inc. v. Aeropostale Inc.*, 2010 U.S. Dist. LEXIS 46951, at * 16-17 (C.D. Cal. May 5, 2010) (granting summary judgment to defendant upon finding plaintiff's copyright registration invalid for failure to comply with the "single work" registration requirement; court found that works were not published in a "single unit of publication"); *Thron*, 2002 WL 1733640, at *1 (dismissing complaint on summary judgment where claimant failed to comply with copyright registration regulations with respect to registration of a group of 57 photographs).

3

## II.   STATEMENT OF FACTS

### A.   Allegations of Copyright Infringement

Plaintiff alleges she is a designer, illustrator and artist. (Compl. ¶ 8.) Plaintiff alleges she created "original works" in the form of 24 pages of two-dimensional artwork, that she "filed" with the United States Copyright Office (the "Collection"). (*Id.* ¶¶ 9, 11, 18, Ex. A.) The 24 pages of the Collection is set forth at Exhibit A to the Complaint.

Plaintiff alleges that, in or around December 1, 1998, she licensed to Pucci International ("Pucci"), a two-dimensional image set forth at Exhibit C to the Complaint that contains profile depictions of three female figures, starting from just below the shoulders to the top of each figure's head (the "Mannequin Illustration"). (*Id.* ¶¶ 14, 16.) The Mannequin Illustration is one of the many images contained in the Collection. (*Id.* Ex. A, p. 19.)

Plaintiff further alleges that "the relationship between [Plaintiff] and Pucci was set forth in a written agreement wherein [Plaintiff] retained all design and/or copyrights to" the Mannequin Illustration and Pucci "was given the <u>exclusive right</u> to sell mannequins with the designs of [Plaintiff]." (*Id.* ¶ 16) (emphasis supplied.) Plaintiff alleges she licensed the Mannequin Illustration to Pucci so Pucci could create and sell mannequins "based on" Plaintiff's design to high-end retail establishments like Neiman Marcus and Bloomingdales. (*Id.* ¶ 14.)

Defendant Chico's FAS, Inc. ("Chico's") is a national specialty retailer of private label women's apparel and accessories. (*Id.* ¶¶ 2-3.) Plaintiff alleges that she was advised by a "certain representative" of Pucci, that he sold a "few" of the mannequins based on the designs licensed by Plaintiff to Pucci with the understanding that a big order from Chico's was "in the works." (*Id.* ¶ 23.) Plaintiff further alleges that she has never authorized Chico's to copy or duplicate any of her original works, including the Mannequin Illustration. (*Id.* ¶ 18.)

Plaintiff alleges that she subsequently learned that Chico's was displaying in its retail stores "female mannequins which were essentially identical to the ones as set forth in the Collection, and in particular the mannequins as shown in Exhibit 'C'." (*Id.* ¶ 19.)  Plaintiff alleges that Chico's mannequins are "knock offs" of the Pucci mannequins that are based on Plaintiff's Mannequin Illustration, and that Chico's, by displaying these mannequins in its stores, has infringed Plaintiff's copyright in the Mannequin Illustration. (*Id.* ¶¶ 20-22, 28-29.)

Chico's denies these allegations of copyright infringement, but they are not the subject of this motion to dismiss.  Rather, as shown below, Plaintiff's copyright registration is invalid and the Court therefore should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted.

**B.      Allegations Concerning Plaintiff's Copyright Registration and Plaintiff's Representations to the Copyright Office in Her Copyright Application**

On or about December 4, 2000, Plaintiff applied for copyright registration of the Collection with the Copyright Office.  (*Id.* ¶¶ 9, 11-12, Exs. A-B.)  In her application for copyright registration, Plaintiff represented that the Collection as a whole was completed in 2000. (*Id.* Ex. B.)  Plaintiff further represented that she first published the Collection as a single collective unit on November 4, 2000. (*Id.*)  Plaintiff also represented to the Copyright Office there were no previous registrations for any of the stand alone illustrations included in the Collection. (*Id.*)

Based on Plaintiff's representations, the Copyright Office issued Plaintiff a copyright registration certificate for the Collection on December 8, 2000 (the "Registration"). (*Id.* ¶ 12, Ex. B.)  Plaintiff was required only to pay a single registration fee of $20 for this registration certificate. (*See* Chico's Request for Judicial Notice;  McCallion Decl., ¶ 8 and Ex. F.[1])

---

[1] The Declaration of Kristen McCallion dated July 9, 2010 (the "McCallion Decl.").

As discussed below, Plaintiff's representation that she first published the Collection as a single collective unit on November 4, 2000 was an important and material representation made to the Copyright Office. Under the governing regulations, that representation permitted her to register the 24 pages of images that comprise the Collection under a single registration, for a single registration fee – as opposed to having to register each image separately and pay a separate fee for each that, *in toto,* would have been approached $500. As demonstrated below, this representation was false, resulting in non-compliance with applicable regulations and causing Plaintiff's registration to be invalid.

### C.   The Complaint Demonstrates That Plaintiff First Published the Mannequin Illustration on or before December 1, 1998 — and Not on November 4, 2000

As noted above, Plaintiff alleges that "the relationship between [Plaintiff] and Pucci was set forth in a written agreement wherein [Plaintiff] retained all design and/or copyrights to" the Mannequin Illustration and Pucci "was given the exclusive right to sell mannequins with the designs of [Plaintiff]" (the "Pucci License Agreement"). *(Id.* ¶ 16.)   A copy of the Pucci License Agreement is attached as Exhibit A to the McCallion Declaration, which the Court may consider on this motion because it is referenced in and incorporated into the Complaint. (*See supra* p. 4; Chico's Request for Judicial Notice.)[2]

The Pucci License Agreement documents the exclusive license between Plaintiff and Pucci "with respect to the design by [Plaintiff] and the manufacture, distribution, promotion and sale by Pucci of certain manikins (sic)." (McCallion Decl., ¶ 3 and Ex. A.)  The Pucci License Agreement operates as an exclusive license to Pucci, in that Plaintiff agreed to "not design manikins (sic) for any other manufacturer" during the term of the agreement. *(Id.* ¶ 2(d).)  The

---

[2] As noted, the Pucci Agreement is referenced in the Complaint by Plaintiff and is properly submitted to the Court as evidence in support of this motion.  It was attached to Plaintiff's Affidavit filed in support of her motion for preliminary injunction, which was filed with the Court on April 27, 2010, but later withdrawn by Plaintiff. (*See* Dkt. Nos. 6-13, 15.)

Pucci License Agreement further provides that "[Plaintiff] has prepared and delivered and hereby licenses to Pucci for manufacture by Pucci the detailed designs for one of more manikins (sic) . . . ." (*Id.* ¶ 1.)

Plaintiff further alleges that, "beginning in or around December 1, 1998," Pucci sold mannequins that were constructed based on Plaintiff's Mannequin Illustration.  (Compl. ¶ 14, 16-17.)  Accordingly, Plaintiff's allegations establish as a factual matter that, prior to or no later than December 1, 1998, Plaintiff delivered to Pucci a copy or copies of the Mannequin Illustration under license, to enable Pucci to sell works derivative of the Mannequin Illustration in the form of mannequins.  As explained further below, Plaintiff thereby "published" the Mannequin Illustration on or before December 1, 1998 — and not on November 4, 2000 as claimed in the Registration.

**D.    The Complaint Demonstrates That Plaintiff First Published Three Other Illustrations Contained in the Collection in March 2000 and October 2000 — and Not on November 4, 2000**

**1.    The Bloomer Illustration**

Plaintiff alleges that she has "illustrated dozens of books." (Compl. ¶ 8.)  For example, one such book, authored by Shana Corey and illustrated by Plaintiff, is entitled "You Forgot Your Skirt, Amelia Bloomer!" (*Id.* Ex. A., p. 9.)  Plaintiff illustrated the cover artwork of the book (the "Bloomer Illustration") and some of its contents.  (McCallion Decl., ¶ 5 and Ex. C; Compl. Ex. A, p. 9.)  The Court may take judicial notice of the fact that Plaintiff previously applied to the Copyright Office, as the copyright claimant, for registration of the Bloomer Illustration on April 27, 2000.  (*See* Chico's Request for Judicial Notice; McCallion Decl., ¶ 4 and Ex. B.)[3]  In that application Plaintiff represented that the Bloomer Illustration first published

---

[3]    The Court may take judicial notice of copyright registrations published on the Copyright Registry.  See Fed. R. Evid. 201(b); *Telebrands Corp. v. Del Laboratories, Inc.*, 2010 WL

on March 1, 2000.  (*Id.*)[4]  Accordingly, Plaintiff's Complaint, taken as whole, demonstrates that

the Bloomer Illustration was published independently from the Collection on March 1, 2000, and

registered as a distinct work apart from the Collection on April 27, 2000.

However, Plaintiff also included the Bloomer Illustration as part of the 24 pages of the

Collection for which she applied for registration on December 4, 2000.  (Compl. ¶ 11, Ex. A. p.

9.)  In this later application, which resulted in the registration that is at issue in this action,

Plaintiff falsely represented that the Bloomer Illustration — along with all of the other

illustrations contained in the Collection — was first published on November 4, 2000.  (*Id.* Ex.

B.)  Plaintiff also omitted to disclose the existence of this previous registration, as is required on

the copyright application form.  (*Id.*)

### 2.    The Dress Illustrations

Plaintiff illustrated the cover artwork for another book entitled "Obsessed by Dress" (the

"First Dress Illustration"), authored by Tobi Tobias ("Tobias") and published by Beacon Press.

(McCallion Decl., ¶ 7 and Ex. E; Compl. Ex. A, p. 16.)  Other of Plaintiff's illustrations are also

depicted inside this book; one in particular appears on page 79 of the book and is the same image

shown on page 18 of Exhibit A to the Complaint (the "Second Dress Illustration").  (McCallion

Decl., ¶ 7 and Ex. E; Compl. Ex. A, p. 18.)  On September 22, 2000, the author Tobi Tobias,

through a Beacon Press representative, registered the First and Second Dress Illustrations as part

of an "entire compilation" comprising the book in its entirety, including all of Plaintiff's

---

2541218, at *2 n.3 (S.D.N.Y., June 15, 2010*); Island Software & Computer Serv., Inc. v.
Microsoft Corp.,* 413 F.3d 257, 261 (2d Cir. 2005)  (court may take judicial notice of documents
contained in Copyright Registry).

[4]  "You Forgot Your Skirt, Amelia Bloomer!" remains available for purchase and in fact was
purchased by Chico's counsel via amazon.com.  (McCallion Decl., ¶ 5 and Ex. C.)  Its cover and
publishing information page also demonstrate the book in fact was published on March 1, 2000.
(*Id.*)

illustrations. (*See* Chico's Request for Judicial Notice; McCallion Decl., ¶ 6 and Ex D.) That registration provides that "Obsessed by Dress," including the First and Second Dress Illustrations, was first published on October 17, 2000. (*Id.*) Plaintiff's Complaint, again taken as whole, demonstrates that the First and Second Dress Illustrations were registered as part of a distinct work separate and apart from the Collection on September 22, 2000, and published independently from the Collection on October 17, 2000.[5]

Again, Plaintiff also included the First and Second Dress Illustrations as part of the Collection for which Plaintiff applied for registration on December 4, 2000. (Compl. ¶ 11 and Ex. A, pp. 16, 18.) They appear on pages 16 and 18 of the Collection, respectively, that have handwriting on the bottom (apparently Plaintiff's) that states "Chesley Beacon Press Book." (*Id.*) In this later copyright application that resulted in the registration that is at issue here, Plaintiff falsely represented that the First and Second Dress Illustrations, along with the other illustrations contained in the 24 pages of the Collection, were first published on November 4, 2000. (*Id.* Ex. B.) Again, there is no indication on the application form concerning the existence of this previous registration, as is required. (*Id.*)

### E.   The Complaint Demonstrates That Plaintiff First Published Many Other Illustrations Contained in the Collection on Dates Other Than November 4, 2000

Paragraph 8 of the Complaint states that Plaintiff is a designer, illustrator and artist. Her distinctive style has brought major commissions from Saks Fifth Avenue, Bergdorf Goodman, Neiman Marcus, Henri Bendel and Bloomingdales, as well as many other high end retailers and publishers. (Compl. ¶ 8.)

---

[5] "Obsessed by Dress" also remains available for purchase and in fact was purchased by Chico's counsel, via amazon.com, which provides that the hardcover version of this book first published on October 19, 2000. (McCallion Decl., ¶ 7 and Ex. E.)

The purchases and commissions of various individual works in the Collection by these "high end retailers and publishers" is reflected in a number of the illustrations contained in the 24 pages of the Collection.   (*See* Compl. Ex. A.)  It is implausible, given the nature of these illustrations, that they were all first published on November 4, 2000 as a collective unit, as Plaintiff represented to the Copyright Office.

A review of the Complaint's allegations and Exhibit A demonstrates that many of the illustrations included within the Collection were published in a variety of magazines, newspapers and advertisements:

- the illustration depicted on page 17 of the Collection is identified by Plaintiff as published in Vogue magazine;

- the image depicted on page 15 of the Collection is identified by Plaintiff as published in Athena magazine;

- the illustration depicted on page 11 of the Collection, entitled "The Wedding Party," is identified by Plaintiff as published in The New York Observer newspaper;

- the image depicted on page 7 of the Collection, entitled "Salon de The Henri Bendel" is identified by Plaintiff as commissioned by Henri Bendel;

- the image depicted on page 8 of the Collection is identified by Plaintiff as commissioned by Bergdorf Goodman;

- the image depicted on page 12 of the Collection is identified by Plaintiff as commissioned by Estee Lauder;

- the images depicted on page 13 of the Collection are identified by Plaintiff as commissioned by Saks Fifth Avenue;

- the image depicted on page 20 of the Collection is identified by Plaintiff as commissioned by Chanel/Dior and published by the Artisan Press;

- the image depicted on page 21 of the Collection is identified by Plaintiff as commissioned by Estee Lauder for product packaging;

- the image depicted on page 22 of the Collection, entitled "C'est Si Bon," is identified by Plaintiff as a "Japan Poster;'" and

10

- the image on page 24 of the Collection is identified by Plaintiff as commissioned by Givenchy Parfum.

(*Id.*)

The Complaint and its Exhibits together demonstrate beyond any doubt that the Collection is a group of disparate illustrations commissioned, published or sold to at least twelve different purchasers. This fact further establishes that Plaintiff will be unable to prove in this Court that each one of the illustrations contained in the 24 pages of the Collection was "first" published on November 4, 2000 as a single, collective unit — as Plaintiff represented to the Copyright Office.

## III.   LEGAL STANDARD ON A MOTION TO DISMISS

A motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6) may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

On this motion, the Court must accept as true all facts alleged in the Complaint. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). In so doing, the Court must "consider the Complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the Complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (citing 5B Wright & Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004 and Supp. 2007). "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

11

**IV.    THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF'S COPYRIGHT REGISTRATION IS INVALID**

**A.    Plaintiff Must Hold a Valid Copyright Registration To Prosecute This Action**

Section 411(a) of the Copyright Act mandates that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Thus, in order to bring a claim for copyright infringement, Plaintiff must first demonstrate that she holds a valid and proper copyright registration. *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1242 (2010); *Thron v. HarperCollins Publishers, Inc.*, 2002 WL 1733640, at *1 (S.D.N.Y. July 26, 2002) (Rakoff, J.) The Court should dismiss a copyright action where the complaint demonstrates that plaintiff does not possess a valid copyright registration. *See Thron*, 2002 WL 1733640, at *1 (dismissing copyright infringement complaint on summary judgment where plaintiff's registration was invalid because Plaintiff failed to comply with the regulations governing registration that had been in effect at that time); *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, 2010 WL 1838874, at *3 (S.D.N.Y., May 4, 2010); *L.A. Printex Indus. v. Aeropostale*, 2010 U.S. Dist. Lexis 46951, at *16-17 (C.D. Cal., May 5, 2010) (dismissing complaint on summary judgment where "[plaintiff] has not produced competent evidence establishing that it holds a valid copyright registration" and therefore "cannot, as a matter of law, prevail on its copyright infringement claim").

**B.    Plaintiff's Copyright Registration is Invalid**

**1.    Plaintiff's Registration is Not Eligible For "Group Registration" Under the Relevant Copyright Regulations**

The Copyright Act states in relevant part:

The Register of Copyrights is authorized to specify by regulation the administrative classes into which works are to be placed for purposes of deposit and registration, and the nature of the copies or phonorecords to be deposited in the various classes

12

specified. The regulations may require or permit, for particular classes . . . *a single registration for a group of related works.*

17 U.S.C. § 408(c)(1) (emphasis supplied).

Thus, under certain circumstances, a plaintiff may register in a single registration (and therefore pay a single fee) a group of "related works," known as "group registration." The Register of Copyrights has exercised the authority delegated to her by 17 U.S.C. § 408(c)(1) by promulgating rules clearly defining those circumstances. *See* 37 CFR § 202.3(b)(5)-(10).[6]  These regulations allow for group registration <u>only</u> of certain enumerated works:  "automated databases," "related serials," "daily newspapers," "contributions to periodicals," daily newsletters," and "published photographs. *See* 37 CFR 202.3(b)(5) – (10); *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 204 (3d Cir. 2005).

The Register of Copyrights' well-defined regulations do not allow for "group registration" of two-dimensional drawings.   For this reason, Plaintiff's registration of the Collection cannot be deemed valid pursuant to the group registration regulations set forth by the Register of Copyrights.[7]  *See Kay Berry*, 421 F.3d at 205 (finding registration of a group of sculptural works under a single registration invalid because the group registration regulations do not allow for group registration of sculptural works); *L.A. Printex*, 2010 U.S. Dist. LEXIS 46951, at *10 (finding registration of a group of fabric patterns under a single registration invalid because group registration regulations do not allow for group registration of fabric patterns); *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp.2d 39, 58 (S.D.N.Y. 2009) (same regarding group registration of jewelry designs).

---

[6] Title 37, Section 202.3 of the C.F.R. sets forth the "conditions for the registration of copyright, and the application to be made for registration under sections 408 and 409 of title 17 of the United States Code."

### 2.    Plaintiff's Registration Does Not Comply With the "Single Work" Regulations Either

Nor, alternatively, is Plaintiff's registration of the Collection valid as a "single work" registration under 37 C.F.R. § 202.3(b)(4).

Pursuant to the Register of Copyrights' regulations, multiple items may also be registered in a single application as a "single work registration" if certain requirements are met. 37 C.F.R. § 202.3(b)(4). A "single work" registration is separate and distinct from a "group registration," in that it is governed by separate regulations and has different requirements. Under the applicable regulations, a single work "[i]n the case of published works" [8] constitutes "[1] all copyrightable elements that are otherwise recognizable as self-contained works, [2] that are included in a single unit of publication, and [3] in which the copyright claimant is the same." *Id.* § 202.3(b)(4)(i)(A); *see also Kay Berry,* 421 F.3d at 205.

A "classic example" of a single work publication is a board game. "[T]he board, the playing pieces, and the instructions may all be individually entitled to copyright protection, but since they are packaged as a single unit (the game itself), it is appropriate to allow the copyright owner to register the entire game, and protect the individual elements through that single registration." *Kay Berry,* 421 F.3d at 205; *see also R.F.M.A.S.,* 619 F. Supp.2d at 58-59 (jewelry collection published as a single unit might qualify for "single work" registration under applicable regulations).

Assuming, *arguendo,* that Plaintiff's registration of the Collection satisfies elements [1] and [3] of the "single work" regulation noted above, her Complaint, taken as a whole,

---

[8] The regulations also allow for the registration of a "single unpublished collection" (37 C.F.R. § 202.3(b)(4)(i)(B)). Those regulations are inapplicable here because Plaintiff has claimed in her registration that all of the illustrations — including the Mannequin Illustration — in Plaintiff's Collection are published (Compl. Ex. B); and the discussion set forth herin, *see infra,* pp. 15-16, demonstrates that all or virtually all of the images in the Collection indeed have been "published."

demonstrates that there are no set of facts that exist to satisfy element [2]. In other words, the Complaint, its exhibits, and the materials for which the Court may take judicial notice, demonstrate beyond any doubt that Plaintiff did not publish the self-contained works in the Collection "in a single unit of publication." 37 C.F.R. § 202.3(b)(4)(i)(A).

The Copyright Act defines "publication" as "the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies . . . to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." 17 U.S.C. § 101. The term "copies" is further defined as "material objects . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated . . . ." *Id.* Further, a "transfer of copyright ownership" is defined as "an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license." *Id.*

The "single unit of publication" requirement is fundamental to a valid copyright registration for a published "single work." In *Kay Berry*, for example, the matter to be decided was whether plaintiff possessed a valid "single work" registration pursuant to the copyright registration regulations. The key issue was whether plaintiff's sculpture alleged to be infringed was first published as a single unit of publication, along with numerous other sculptures in a catalog that had been registered under a single copyright application. The Third Circuit remanded for a determination of this issue. *See Kay Berry*, 421 F.3d at 205-06 and n. 2.

In *L.A. Printex*, the defendant sought to dismiss the complaint by arguing that the plaintiff did not possess a valid copyright registration on the ground that the registration did not

satisfy the "single work" registration requirement.   There, as here, the plaintiff registered a

collection of multiple distinct works, in that case fabric patterns, in a single registration. 2010

U.S. Dist. Lexis 46951, at * 2.   In *L.A. Printex,* as in this case, the plaintiff could not establish

that it had published all thirteen fabric patterns at the same time in a single unit. *Id.* at *13.   In

fact, the defendant there showed that plaintiff had published one of the fabric patterns separately

and apart from the other fabric patterns registered by its single copyright registration. *Id.*

Consequently, the court granted summary judgment dismissing the complaint. *Id.*

   Here, as in *L.A. .Printex,* Plaintiff's Complaint, taken along with the exhibits and judicial

notice materials, together demonstrate beyond any doubt that Plaintiff did not publish the

illustrations contained in the 24 pages of the Collection as a "single unit of publication."   For

Plaintiff to show this in her allegations, she would have to demonstrate that **every single**

**illustration** contained in the Collection was first published together on the date she represented

to the Copyright Office when submitting her copyright application, *i.e.,* November 4, 2000.   This

she cannot do.

   First, with respect to the Bloomer Illustration, the Complaint, taken as whole,

demonstrates this drawing was clearly "published" within the meaning of the Copyright Act, but

was not first published on November 4, 2000, as Plaintiff represented.   Instead, the Complaint,

along with another of Plaintiff's copyright registrations, demonstrates beyond doubt that this

illustration was first published on March 1, 2000.   Further proof is unnecessary and, as in *L.A.*

*Printex,* a showing that even just one of the works in the Collection was published at a different

date is sufficient to invalidate the registration.

   But the undisputed proof of invalidity does not end there.   A second example is provided

by the First and Second Dress Illustrations that also were "published" within the meaning of the

16

Copyright Act. The Copyright registration for the book in which these illustrations reside, "Obsessed by Dress," likewise shows — via the sworn documentation filed by the Beacon Press Publishing company — that this illustration <u>was first published on October 17, 2000</u> -- and not on November 4, 2000, as Plaintiff represented.

This indisputable proof is more than sufficient to cause the Court to dismiss the Complaint. If there were any doubt remaining, however, the Pucci License Agreement settles the matter. That agreement demonstrates that the Mannequin Illustration contained in the Collection was not published on November 4, 2000, but was in fact published two years prior. The Mannequin Illustration was published, both because it was transferred pursuant to an exclusive license to Pucci in or around December 1998, and because copies, embodied in mannequins alleged to constitute derivative works, were distributed for sale by Pucci. 17 U.S.C. § 101; *see also Shoptalk, Ltd. v. Concorde-New Horizons Corp.*, 168 F.3d 586, 591 (2d Cir. 1999) ("[T]he publication of the derivative work, to the extent that it discloses the original work, also constitutes publication of that underlying work."); M. Nimmer & D. Nimmer, *Nimmer on Copyrigh*t § 4.12[A], at 4-60 (1997) ("[A]ny authorized publication of a derivative work must necessarily also constitute a publication of the preexisting work upon which it is based."). For this reason, too, Plaintiff can never demonstrate that all of the illustrations contained in the Collection were published simultaneously as a single unit.

Finally, if further corroboration was needed (and it is not), the additional illustrations contained in the Collection powerfully provide it. As detailed above (*see supra* pp. 9-11), Plaintiff's other illustrations published in newspapers and magazines, such as <u>The New York Observer</u>, <u>Vogue</u>, and <u>Athena</u>, and in promotional materials or packaging for retailers such as Bergdorf Goodman, Bendel's, Estee Lauder, Saks Fifth Avenue, Chanel, Christian Dior, and

Givenchy, demonstrate the utter implausibility that the multiple illustrations contained in the Collection were published as a single unit.  Looking at the materials as a whole and applying common sense allows for only one factual conclusion:  the illustrations within Plaintiff's Collection were published at different times.

Because Plaintiff did not publish the illustrations contained in the Collection as a "single unit of publication," Plaintiff failed to satisfy the "single work" registration regulation, and her registration is invalid.  *E.g., Kay Berry*, 421 F.3d at 204-207; *L.A. Printex*, 2010 U.S. Dist. LEXIS 46951, at *16-17.  Accordingly, the Court should dismiss the Complaint with prejudice, because Plaintiff can never demonstrate factually that she holds a valid and proper copyright registration.  *Thron*, 2002 WL 1733640, at *1; *Muench Photo*, 2010 WL 1838874, at * 8 (dismissing Complaint where plaintiff filed to comply with the Copyright Act's registration requirements and thus "fail[ed] to state a cause of action" ); *L.A. Printex*, 2010 U.S. Dist. LEXIS 46951, at *16-17 (granting summary judgment to defendant upon finding plaintiff's copyright registration invalid for failure to comply with the "single work" registration requirement; court found that works were not published in a "single unit of publication").[9]

---

[9]  To the extent Plaintiff argues that she can rely upon a presumption of validity of her copyright registration, Chico's has rebutted this presumption convincingly, thus requiring dismissal of this action. *E.g., L.A. Printex*, 2010 U.S. Dist. LEXIS 46951, at *14 (recognizing that an accused infringer can rebut the presumption of validity by offering "some evidence" to dispute plaintiff's purported *prima facie* case).

## V.     CONCLUSION

Because Plaintiff does not hold a valid copyright registration, Plaintiff has failed to state a claim upon which relief can be granted.  Therefore, Defendant Chico's FAS, Inc. respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.


Respectfully submitted,

FISH & RICHARDSON P.C.

Dated:  July 9, 2010                              By:  _____
                                                        Matthew L. Levine (ML 6247)
                                                        Kristen McCallion (KM 5593)
                                                        FISH & RICHARDSON P.C.
                                                        601 Lexington Avenue, 52nd Floor
                                                        New York, New York  10022-4611
                                                        Telephone:  (212) 765-5070
                                                        Facsimile:   (212) 258-2291

                                                        Attorneys for Defendant
                                                        Chico's FAS Inc.